❏ Original          ❏ D...

CLERK'S OFFICE
A TRUE COPY
Feb 03, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   23   MJ   1 |
| The Cellular Telephone Assigned Call | ) |
| Number 414-553-4801 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   2/17/2023   *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   William E. Duffin, U.S. Magistrate Judge   .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for   30   days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      2/3/2023 at 10:37 AM

*William E. Duffin*
*Judge's signature*

City and state:   Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned call number **414-553-4801** (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) unknown, that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.

2. The Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period December 21, 2022 to present:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.	All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.	Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i.	Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.	Source and destination telephone numbers;

iii.	Date, time, and duration of communication; and

iv.	All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c.	Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.	To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Rayvon D. Edwards during the period from April 1, 2022 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**CLERK'S OFFICE**
**A TRUE COPY**
Feb 03, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Cellular Telephone Assigned Call Number<br>414-553-4801 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.    23    MJ    1

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the      District of                 , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed.
- ☑ property designed for use, intended for use, or used in committing a crime.
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 843(b), and 846 | Manufacture, distribute, and possess with the intent to distribute a controlled substance, unlawful use of a telephone facility to further a felony drug crime, and conspiracy to do the same. |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of   30   days *(give exact ending date if more than 30 days:*       *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Task Force Officer Ryan Reagan (FBI)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
     telephone      *(specify reliable electronic means)*.

Date:   2/3/2023

*Judge's signature*

City and state:   Milwaukee, Wisconsin      William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Ryan Reagan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-553-4801 (the "Target Cell Phone"), whose service provider is AT&T ("Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3.      I am a Task Force Officer with the Federal Bureau of Investigation and have been since November 2021 with the Milwaukee Area Safe Streets Task Force, and I am a Police Officer with the Milwaukee Police Department and have been since December 2014.

4.      As a Police Officer and Task Force Officer, I have participated in the investigation of gang and narcotics related offenses, resulting in the seizure of illegal drugs, weapons, United

2

States currency, and other evidence of criminal activity. As an investigator, I have interviewed many individuals involved in drug trafficking and gang activity, and have obtained information from them about the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the drug traffickers, gang members, and abusers of controlled substances. I have participated in all aspects of drug and gang investigations, including physical surveillance, execution of search warrants, court-ordered wiretaps, analysis of phone and financial records, and the arrests of drug traffickers. I have also been the affiant and participated in the preparation and execution of drug and gang-related search warrants. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers and gang members to manufacture, smuggle, safeguard, and distribute narcotics and firearms, and to collect and launder trafficking-derived proceeds. In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

5.     The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and confidential human sources. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) have been committed, are being committed, and will be committed by Rayvon D. Edwards. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of Rayvon D. Edwards regarding possible violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b)  (distribution of a controlled substance, possession with intent to distribute a controlled substance, using a telephone to facilitate a felony drug crime, and drug conspiracy).

9.      The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; documentary evidence; telephone toll data and physical surveillance.

10.     The Milwaukee Police Department opened an investigation into Rayvon D. Edwards in 2019. At the time, Edwards was part of an organization called YPN. During the course of the investigation, the Milwaukee Police Department conducted a controlled buy into Edwards using a Confidential Human Source for 57.6 grams of cocaine and 25.6 grams of heroin.

11.     In June 2021, the Milwaukee Police Department identified multiple residences associated with Rayvon Edwards including one apartment in the downtown district of Milwaukee, which Edwards used as a cook house for narcotics processing. Another confidential informant, handled by the Milwaukee Police Department, identified Quantie C. McDonald as a person who transported drugs for Edwards including the cook house.

12.     On June 9, 2021, the Milwaukee Police Department responded to an overdose at the cook house in downtown Milwaukee, where responding officers discovered McDonald deceased in the apartment. Edwards was on scene and was the 911 caller who reported the death. The search of the apartment produced Pyrex containers containing mixes of white powder residue on them. The Wisconsin Regional Crime Laboratory identified fentanyl as a part of the mixture.

13.     Case agents have since received information regarding the illegal drug trafficking activities of Rayvon D. Edwards from a confidential source (hereinafter "CHS #1"). CHS #1 has been providing reliable information to the Federal Bureau of Investigation since March 2022. Specifically, CHS #1 provided information that directly led to a search warrant regarding a known target which led to the recovery of three firearms and a distribution-level quantity of marijuana and crack cocaine.

14.     CHS #1 has provided information about the membership, structure, and customs of Edwards's drug trafficking organization. CHS #1 has positively identified Edwards as the leader of that drug trafficking conspiracy through a Milwaukee Police Department booking photo. Further, CHS #1 identified Daje M. Hunter through a Wisconsin Department of Transportation photograph as Edwards's girlfriend and as an active participant in the drug trafficking organization. CHS #1's information regarding Edwards's drug trafficking organization has been corroborated by other investigations into Edwards and his associates, information obtained from various public databases including Experian, phone data, Wisconsin Circuit Court Access

Program, physical surveillance, and other investigative information. CHS #1's information has never been found to be false or misleading.

15. The information provided by CHS #1 is consistent with evidence obtained elsewhere in this investigation, and substantial parts of CHS #1's information have been corroborated through independent investigation, including information obtained from various public databases, physical surveillance, and electronic surveillance. CHS #1 has a criminal history that includes theft, property damage, trespass, drug trafficking, and vehicle and traffic violations. CHS #1 is receiving consideration in connection with pending drug and firearms cases from the Milwaukee County District Attorney's Office for his/her cooperation with law enforcement. CHS #1 was recently arrested and charged with possession of marijuana, possession of drug paraphernalia, and bail jumping and released on bond. For these reasons, case agents consider CHS #1 to be reliable.

16. CHS #1 informed investigators that Edwards picks up two to four kilograms of cocaine and heroin a week. CHS #1 informed investigators that he/she typically communicates with Edwards via FaceTime, contacting him on phone number 414-491-2298. CHS stated they also speak via text and traditional voice call, but usually via FaceTime. CHS #1 said that Edwards communicates with text, traditional call, and FaceTime. However, the traditional phone call conversations are generally short with limited information. CHS #1 said that when Edwards engages in drug transactions with drug users that he will sell the cocaine or heroin for $50 per gram and will occasionally sell the cocaine and heroin for $20 per gram in an attempt to acquire more consumers.

17. On multiple occasions in March and April 2022, CHS #1 provided information about Rayvon Edwards's communication. On March 23, 2022, CHS #1 provided case agents with two phone numbers that Edwards uses for narcotics trafficking. CHS #1 identified 414-491-2298

as Edwards's high-level drug line, the phone number that he uses to contact sources of supply. CHS #1 identified 414-899-7597 as Edwards's low-level drug line, the phone number that he uses to distribute controlled substances. Case agents issued administrative subpoenas for subscriber and telephone toll data for both call numbers, and an analysis of the data showed many common call numbers with which both the high-level drug line and low-level drug line were in frequent contact, consistent with Edwards controlling both call numbers.

18.     In early March 2022, CHS #1 informed case agents that Hunter drives a black Mercedes SUV. Later in March 2022, CHS #1 contacted case agents and informed them that Hunter's SUV had a Wisconsin license plate ANP-8319. A check of the Wisconsin Department of Transportation's records shows that Wisconsin license plate ANP-8319 lists to Hunter as the registered owner with an address of 7210 West Capitol Drive, Milwaukee, Wisconsin.

19.     CHS #1 informed case agents that Edwards purchased an auto shop and provided an address of 7210 West Capitol Drive, Milwaukee, Wisconsin. CHS #1 said that Edwards had purchased the auto shop, was refurbishing the auto shop to operate as a legitimate source of income, but was paying for the improvements with proceeds of drug trafficking. A Currency Transaction Report (CTR) #31000212039542 associated with Daje M. Hunter, Edwards's girlfriend, dated March 16, 2022 listed 414-446-0856 as Hunter's contact phone number. A follow-up search of Experian phone data identified 414-446-0856 as being associated with Daje M. Hunter. Utility checks conducted in April 2022 on 7210 West Capitol Drive, Milwaukee, Wisconsin listed Daje M. Hunter as the responsible party with a phone number of 414-446-0856. In mid-April 2022, case agents contacted the Wisconsin Department of Financial Institutions via an open records request regarding any corporations associated with Rayvon D. Edwards or Daje M. Hunter. Edwards was listed as the registered agent of Lavish Tuning Auto Repair LLC, located at 7210 West Capitol Drive, Milwaukee, Wisconsin.

20.    CHS #1 also provided information regarding a drug trafficker known to CHS #1 as "Fifty," later identified as William H. Pope (DOB: 02/28/2000). CHS #1 reported that in March 2022 Pope was involved in a vehicle pursuit with the Milwaukee Police Department in a black Jeep SRT. Case agents are aware that Pope was arrested in a vehicle pursuit driving a black Jeep SRT. Court records show that Pope was charged for this crime in Milwaukee County Case Number 2022CF001012 with one count of fleeing or eluding an officer causing bodily harm or property damage, in violation of Wisconsin Statute 346.04(3), three counts of first-degree recklessly endangering safety, in violation of Wisconsin Statute 941.30(1), and driving or operating a vehicle without owner's consent, in violation of Wisconsin Statute 943.23(3), and possession with intent to deliver cocaine with use of a dangerous weapon, in violation of Wisconsin Statutes 961.41(1m)(cm)2 and 939.63(1)(b). On March 16, 2022, he appeared in Milwaukee County Circuit Court and was turned over to Justice Point supervision and ordered not to possess controlled substances, dangerous weapons, or firearms.

21.    CHS #1 informed investigators that Pope is a mid-level distributor in the Edwards's drug trafficking organization. CHS #1 informed case agents that Pope receives a couple of ounces of narcotics a week from Edwards and that Pope is known to possess firearms while drug trafficking. CHS #1 identified Pope as "Fifty" in a Milwaukee Police Department booking photo.

22.    Pope was stopped by law enforcement on March 11, 2022 with 13 grams of cocaine/fentanyl and $6,632 cash in his pocket. CHS #1 was aware that either Edwards or a person associated with Edwards posted $10,000 bail for Pope. CHS #1 later informed investigators that Daje Hunter withdrew $10,000 for Pope's bail on March 16, 2022. Milwaukee County Jail and bail records show that "Latanya Mays" paid $10,000 for William Pope's bail on March 16, 2022.

23.     On May 15, 2022, Edwards was arrested in Chicago, Illinois with 142 grams of crack cocaine and two digital scales. While in custody, Edwards called Daje Hunter at 414-446-0856.

24.     On May 26, 2022 the Honorable Nancy Joseph, United States Magistrate Judge of the Eastern District of Wisconsin, signed a warrant for location information for 414-491-2298 in Case No. 22-917M (NJ).

25.     On June 24, 2022, the Honorable Nancy Joseph, United State Magistrate Judge of the Eastern District of Wisconsin, signed an extension of the warrant for location information for 414-491-2298 in Case No. 22-917M (NJ)

26.     On July 8, 2022, case agents conducted surveillance on Edwards using the location information for Edwards's prior phone number 414-491-2298. While the location information showed 414-491-2298 in the vicinity of 7210 West Capitol Drive, Milwaukee, Wisconsin, case agents observed Pope arrive at the same location in a gray Dodge Charger. Case agents observed Pope and Edwards both enter 7210 West Capitol Drive, Milwaukee, Wisconsin and then exit a short time later. Case agents observed Pope enter the driver seat of the Charger,  travel one block away, and park in the 4000 block of North 72nd Street, Milwaukee, Wisconsin near a red Saturn Vue. While parked, a white female exited the Saturn and approached the driver window of Pope's Charger. The white female engaged in what appeared to be a hand-to-hand transaction with Pope before returning to her vehicle. A traffic stop was later conducted on the Saturn Vue, and the female admitted to purchasing cocaine and heroin from a black male matching Pope's description in a gray Dodge Charger. Law enforcement officers recovered heroin from the Saturn Vue, and the female said that she consumed the cocaine.

27.     Case agents were made aware of a vehicle pursuit which occurred on July 12, 2022, during which MPD Officers pursued a 2015 Hyundai Sonata driven by Jerold Lee-Brown (DOB:

02/09/1995). At the end of the vehicle pursuit, Lee-Brown exited the Sonata and ran to a waiting gray Dodge Charger and entered the back passenger seat. The Dodge Charger then fled. Case agent review of the squad camera video and reports indicated that the pursuit began at approximately 7:38 p.m. from the area of 2111 South 14th Street, Milwaukee, Wisconsin. At approximately 7:57 p.m., the Hyundai Sonata drove through a vacant field near North 28th Street and North 29th Street towards West St. Paul Avenue, where a gray Dodge Charger with black rims was waiting facing eastbound towards the freeway entrance. As the Sonata drove through the field, Lee-Brown exited the driver door and began to run towards the Charger. The rear driver side door of the Charger was opened from the inside by an occupant of the vehicle. Lee-Brown entered, and the Charger subsequently fled onto the freeway, eluding the police. Case agents recognized the Dodge as a similar body style, color, and color rims as the vehicle known to be operated by Pope. The police officers reported that the Charger had a possible plate of ANK-3228 but had a license plate cover over the plate. This plate number is similar to the plate on Pope's Charger which is AKX-3238. A review of the electronic video surveillance at Edwards's auto shop located at 7210 West Capitol Drive, Milwaukee, Wisconsin captured Edwards, shortly after this pursuit, partially opening a garage bay door, which a gray Dodge Charger, matching the appearance of the one from the fleeing incident, then entered. The garage bay door was then immediately closed behind the vehicle. A subject with a similar build and clothing appearance as Lee-Brown exited the shop along with subjects matching the physical characteristics of Pope and Edwards.

28.     A review of the location information for Edwards's prior phone number 414-491-2298 showed that his phone was in the vicinity of the auto shop at 7210 West Capitol Drive, Milwaukee, Wisconsin at the time of the pursuit, and a review of the pen register data revealed that 414-750-9792 called Edwards at approximately 8:01 p.m. for approximately 36 seconds just prior to an unknown male running to the shop and Edwards returning to the shop. A second call

with the same number began at 8:07:39 p.m. and lasted 1 minute 49 seconds. This call was terminated within 3 seconds of the Dodge Charger pulling into the garage bay.

29.     Case agents have since received information concerning the illegal drug trafficking activities of Rayvon D. Edwards from a confidential source (hereinafter "CHS #2"). CHS #2 has provided information about the membership, structure, and customs of Edwards' drug trafficking organization. CHS #2 has been providing information related to Edwards since June of 2022. CHS #2 has positively identified Edwards as the leader of that drug trafficking conspiracy through a Milwaukee Police Department booking photo. CHS #2's information concerning Edwards' drug trafficking organization has been corroborated by other investigations into Edwards and his associates, information obtained from  various public databases, including Experian, phone date, Wisconsin Circuit Court Access Program, physical surveillance, and other investigative information. CHS #2 information has never found to be false or misleading.

30.     CHS #2 has a prior State of Wisconsin conviction for drug trafficking and a firearm offense and currently has an open felony case for drug trafficking and firearms offenses.  CHS#2 was questioned and provided information both known and unknown to investigators, the information provided by CHS #2 regarding the Edwards investigation is corroborated and is found to be reliable.  The known information that CHS #2 provided regarding the Edwards investigation is the location of the auto shop, the vehicles known to be used by Edwards, the identity of his girlfriend, the aforementioned overdose of Quantie McDonald, the paying of William Pope's bail, Edwards phone number and the level drug trafficker that Edwards is involved and the quantity of Currency Edwards is known to possess.

31.     CHS #2 confirmed that Edwards is a large-scale supplier of heroin and cocaine in the greater Milwaukee area and that Edwards is known to be in possession of $100,000 on his

person at a time. CHS #2 has observed Edwards in possession of a kilogram of heroin in a vehicle within the past three months but could not recall a location or date.

32.    In October 2022, CHS #2 informed case agents that Edwards moved to a new residence located on the northside of Milwaukee. Case agents conducted follow up, which revealed through an Open Law Enforcement Resource (OLER) that Daje Hunter has an active account for the address at 11346 North Buntrock Avenue, Unit 109, Mequon, Wisconsin, active since October 4, 2022.

33.    Investigators developed another confidential source—Confidential Human Source #3 (CHS #3), who is providing information about Edwards's drug trafficking. CHS #3 has provided information about the membership, structure, and customs of Edwards's drug trafficking organization. CHS #3 has been providing information related to Edwards since August 2022, but has provided information to law enforcement for over three years. CHS #3 has positively identified Edwards as the leader of that drug trafficking conspiracy through a Milwaukee Police Department booking photo. CHS #3's information concerning Edwards's drug trafficking organization has been corroborated by other investigations into Edwards and his associates, information obtained from various public databases including Experian, phone data, Wisconsin Circuit Court Access Program, physical surveillance, and other investigative information. CHS #3's information has never been found to be false or misleading.

34.    CHS #3 has prior convictions for retail theft, resisting or obstructing an officer, endangering safety by use of a dangerous weapon, disorderly conduct, fleeing or eluding an officer, and vehicle and traffic violations, and currently has open cases for drug trafficking and resisting or obstructing. CHS #3 has made statements to law enforcement against his penal interests in the open felony case(s) and is currently providing information to law enforcement for consideration for the open felony case(s).   The known information that CHS #3 provided regarding the Edwards

investigation is the location of the auto shop, the vehicles known to be used by Edwards, the identity of his girlfriend, the level of drug trafficking in which Edwards is involved, and the quantity of currency that Edwards is known to possess.

35.     CHS #1, CHS #2 and CHS #3 provided information to investigators that Rayvon Edwards purchases two to four kilograms of cocaine and heroin on weekly basis and distributes the cocaine and heroin throughout the County of Milwaukee to street-level drug traffickers.  CHS #1, CHS #2 and CHS #3 provided information that Rayvon Edwards uses phone calls or FaceTime to communicate with street-level drug traffickers to establish a location for the exchange of drugs for United States currency. CHS #1 said that Edwards will often be accompanied by his girlfriend Daje Hunter when Edwards picks up the kilograms of cocaine and heroin from Edwards's supplier. CHS #1 said that Edwards uses Hunter to drive during these pickups to avoid law enforcement detection.  CHS #1 has not been able to provide information to investigators which would establish a source of supply, time of pickups from the supplier, or the location where Edwards and supplier conduct the drug transaction.

36.     CHS #1, CHS #2 and CHS #3 provided information that Rayvon Edwards sells cocaine in ounce quantities for $900 per ounce, either powder cocaine or crack cocaine, and that Edwards sells heroin for $40 per gram.  CHS #1, CHS #2, and CHS #3 have said that that they have observed Edwards in possession of more than $50,000 on his person on multiple occasions and have heard Edwards brag about possessing between $500,000 and $1,000,000 in United States currency as a result of drug trafficking.

37.     On August 17, 2022, CHS #3 said that Edwards had recently started using a new phone number to facilitate drug transactions, and provided Edwards's phone number as 414-748-9891. A review of telephone toll records from AT&T showed that call number 414-748-9891 was in contact with multiple different numbers that Edwards's prior call number 414-491-2298 had been

in contact with, including the call numbers for Edwards's girlfriend Daje Hunter and Laquonda Criss.

38.     On November 16, 2022, CHS #2 conducted a controlled purchase of cocaine and heroin from Edwards. Prior to the controlled buy, CHS #2 placed a consensually recorded phone call to Edwards at 414-748-9891, where Edwards and CHS #2 discussed the sale of "two zaps and 15 grits" for "2250," consistent with a drug transaction.

39.     On November 16, 2022, prior to the controlled buy, Edwards was observed via remote static electronic surveillance at 7210 West Capitol Drive, Milwaukee, Wisconsin with a small black bag that appeared to have items inside along with a hammer. Edwards entered a black Audi Q7 bearing WI Auto 344LXC and departed the location. A short time later, Edwards was observed arriving at 11346 North Buntrock Road, Mequon, Wisconsin—the new home that had been identified with Edwards and Hunter.

40.     Shortly after Edwards's arrival at 11346 North Buntrock Road, Mequon, Wisconsin, CHS #2 placed the recorded phone call for two ounces of cocaine and 15 grams of heroin. Case agents observed CHS #2 meet with Edwards, where Edwards directed CHS #2 to follow him into an alleyway near where CHS #2 was parked.  While in the alleyway, Edwards and CHS #2 had an interaction between vehicles from CHS #2's front passenger window and Edwards's driver window.  CHS #2 then departed and drove to the pre-determined meet location, where CHS #2 turned over approximately two ounces of an off-white powdery substance, suspected to be cocaine, in a clear plastic sandwich bag and a tan, rock-like substance, suspected to be heroin, in a clear plastic sandwich bag. CHS #2 said that, while in the alleyway, CHS #2 provided Edwards with the pre-recorded United States currency and Edwards provided CHS #2 with the suspected cocaine and heroin. Case agents field tested the off-white powdery substance, which field tested positive for cocaine, and the tan, rock-like substance, which tested positive for

methamphetamine. Case agents have reviewed the controlled audio-video recording, and CHS #2's information is consistent with the information that CHS #2 provided.

41.     On December 21, 2022, CHS #2 said that Edwards began to get suspicious that law enforcement may be investigating him and obtained a new phone number. CHS #2 provided that number as 414-553-4801—the Target Cell Phone.

42.     On January 25, 2023, CHS #2 spoke with investigators and stated that Edwards is currently using call number 414-553-4801—the Target Cell Phone—to facilitate drug transactions with street-level drug traffickers, and that CHS #2 last contacted Edwards on the Target Cell Phone within the past 72 hours of January 25, 2023.

43.     Case agents conducted a telephone toll analysis of 414-553-4801—the Target Cell Phone—from October 22, 2022 to January 19, 2023, and found that the Target Cell Phone is in contact with multiple call numbers that case have identified as being involved in Edwards's drug trafficking organization, including Daje Hunter, Laquonda Criss, and a number identified as Rayvon Edwards's personal phone number.

44.     Based on the information described above, I believe Rayvon Edwards is the primary user of the target cell phone and uses it, at least in part, to assist in the distribution of controlled substances, the possession of controlled substances with the intent to distribute, the use of a telephone facility to further a felony drug crime, and a conspiracy to distribute and possession with the intent to distribute controlled substances.

45.     I believe that the historical and prospective location information for the Target Cell Phone will assist with physical, electronic, and aerial surveillance. This has been difficult due to Edwards's counter-surveillance techniques, and the reckless manner in which Edwards operates his vehicle. Based on the investigation to date, Edwards's pattern of travel in both destination and duration is unpredictable. Many of Edwards's daytime stops are located in neighborhoods where

the presence of law enforcement is likely to be detected. The location information for the Target Cell Phone will be an important supplement to physical, electronic, and aerial surveillance of Edwards and others involved in his drug trafficking organization.

## TECHNICAL BACKGROUND

46.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

47.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices

to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## E-911 Phase II / GPS Location Data

48.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

49.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### Subscriber Information

50.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

51.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

52.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

53.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

54.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

55.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize

execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1.  Records and information associated with the cellular device assigned call number **414-553-4801** (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) unknown, that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.

2.  The Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period December 21, 2022 to present:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Rayvon D. Edwards during the period from April 1, 2022 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.